<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL JACOBSON, | Civil Action No. 24-10013 (MEF) (MAH) |
| Plaintiff, | |
| v. | |
| CHARM CITY AVIATION, LLC, KEITH BROTHERS, MARILYN BELO, ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities) and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals), | REPORT AND RECOMMENDATION |
| Defendants. | |

**I.    INTRODUCTION**

This matter comes before the Court by way of Plaintiff Michael Jacobson's motion to remand pursuant to 28 U.S.C. § 1447(c), D.E. 8.  Also before the Court is the cross-motion of Defendants, Charm City Aviation, LLC ("Charm City"), Keith Brothers ("Brothers"), and Marilyn Belo ("Belo"), to dismiss Brothers, D.E. 15.  The Honorable Michael Farbiarz, U.S.D.J., referred this motion to the Undersigned for a Report and Recommendation.  *See* Local Civ. R. 72.1(a)(2).  The Undersigned has considered the matter without oral argument.  *See* Local Civ. R. 78.1(b).  For the reasons set forth herein, the Undersigned respectfully recommends that the District Court grant Plaintiff's motion to remand, deny Plaintiff's request for attorney's fees, and terminate as moot Defendants' cross-motion to dismiss Defendant Brothers from the Complaint.

## II. BACKGROUND

Plaintiff, a resident of New Jersey, worked as Director of Operations for Charm City[1] from January 2024 until he was terminated on May 17, 2024.[2]  *See* Notice of Removal, Ex. A, Compl., Oct. 23, 2024, D.E. 1-1, ¶¶ 7, 28.  Brothers, the Chief Executive Officer of Charm City, is a resident of New Hampshire.  Notice of Removal, D.E. 1, p. 3, ¶ 7; Compl., D.E. 1, p. 11, ¶ 10.  Belo, the Director of Human Resources and Administration of Charm City, is a resident of New Jersey.  Notice of Removal, D.E. 1, ¶¶ 7, 9.  Pursuant to Charm City's General Operations Manual ("Manual"), approved by the Federal Aviation Administration ("FAA"), as the Director of Operations, Plaintiff was responsible for guaranteeing that all flight operations were conducted in accordance with FAA regulations.  Compl., D.E. 1, ¶¶ 9-13.

Plaintiff asserts that on his first day at Charm City, he and Brothers met with Alex Ramirez ("Ramirez"), Assistant Operations Manager, to explain the importance of operational control.[3]  *Id.* ¶ 15.  During that meeting, Plaintiff advised Ramirez that "his actions regarding dispatching aircraft, working with maintenance and scheduling pilots exposed" Charm City to potential liability.  *Id.* ¶ 16.  Plaintiff maintains that he instructed Ramirez that he should not conduct any aviation logistics, because that was Plaintiff's responsibility.  *Id.* ¶¶ 17-20.  However, Plaintiff asserts that he soon discovered that Ramirez was disregarding Plaintiff's

---

[1]  Charm City is a limited liability company comprised of KB Hudson, LLC ("KB Hudson"), Aeronautics Management Team, LLC ("AMT") and Caitlyn Ephraim ("Ephraim").  Notice of Removal, D.E. 1, ¶ 7.  KB Hudson is a citizen of Maryland.  *Id.*  AMT is a resident of Arizona.  *Id.*  Ephraim is a resident of Maryland.  *Id.*

[2] For purposes of the motions, the Court assumes as true the factual allegations in the complaint. *See Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851-52 (3d Cir. 1992).

[3]  The FAA's definition of operational control "means the exercise of authority over initiating, conducting or terminating a flight."  Compl., D.E. 1, ¶ 11.

2

directives to him. *Id.* ¶ 21. Instead, Ramirez "continued to schedule pilots, monitor aircraft maintenance and dispatch aircraft in violation of the Manual and the FAA regulations." *Id.* Plaintiff contends that he repeatedly met with Ramirez to explain the importance of operational control and how it was Plaintiff's job, not Ramirez's, to ensure compliance with all FAA regulations, including all logistics for Charm City. *Id.* ¶¶ 17-20.

Plaintiff further alleges that he spoke with Ramirez because he believed Ramirez was not reporting cash income from the sale of hats, shirts, tours, and photographs. *Id.* ¶ 22. He instructed him to report all cash income daily. *Id.* ¶ 24. Plaintiff also informed Ramirez that it was Plaintiff's responsibility to monitor all income and expenses, and comply with IRS regulations. *Id.* ¶ 23. "Shortly after learning of the unreported cash income, Plaintiff advised Defendant Belo . . . of his objections. Defendant Belo assured Plaintiff that she would speak with Mr. Ramirez about the cash income and make sure that he reported this income properly in the future." *Id.* ¶ 25. Despite Plaintiff's conversations with both Ramirez and Belo, Plaintiff contends that he did not see any reports of cash income or deposits. Further, none of the Excel spreadsheets Belo provided him reflected any cash-income entries. *Id.* ¶ 26.

On May 10, 2024, Plaintiff expressed his concerns with Ramirez's actions in an email to Belo. *Id.* ¶ 27. Plaintiff stated to Belo:

> Although I have had numerous conversations with Mr. Ramirez, I don't think he understands the seriousness of non compliance with the FAA. If this is discovered that a non aviation personnel is making a logistic decision for CHARM and something goes wrong, Charm can lose: our operation certificate and our letters of authorization could be pulled and we would be fined.

*Id.* Plaintiff asserts that one week later, on May 17, 2024, he was terminated. *Id.* ¶ 28. Plaintiff contends that Charm City "by and through its agents, namely Defendant Brothers and/or Defendant Belo, made the decision to terminate" him. *Id.* ¶¶ 31, 36, 41, 46.

3

On August 27, 2024, Plaintiff filed a civil action in the Superior Court of New Jersey, Law Division, Essex County alleging violations of the New Jersey Conscientious Employee Protection Act ("CEPA").[4]  Compl., D.E. 1, ¶¶ 7-49.  Plaintiff argues that Charm, through its agents Brothers and Belo, terminated him because he objected to, and refused to participate in, a practice, policy, or activity that he believes violated the FAA Regulations.  *Id.* ¶ 36.

On October 23, 2024, Defendants timely removed this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1332(a).  Notice of Removal, ¶¶ 1-17, Oct. 23, 2024, D.E. 1.  Defendants claim that because Plaintiff seeks "compensatory damages, punitive damages, interest, attorneys' fees and enhancements, costs of suit, and other such legal and equitable relief as the Court deems to be equitable and just," the amount in controversy exceeds the required threshold.  *Id.* ¶¶ 14-17.  As for § 1332(a)'s requirement that the plaintiff and defendants be of diverse citizenship, Defendants contend that complete diversity exists because Plaintiff fraudulently joined Belo as a party to prevent removal.  *Id.* ¶¶ 7-13.

Plaintiff has now moved to remand this action back to the Superior Court of New Jersey, Law Division, Essex County.  *See* Mot. to Remand, Nov. 21, 2024, D.E. 8.  Plaintiff submits that Belo is a proper party to this lawsuit, and therefore, the parties' citizenship is not diverse under § 1332(a).  *See* Pl.'s Br. in Supp. of Mot. to Remand, Nov. 21, 2024, D.E. 8-1.

Defendants have opposed Plaintiff's motion to remand and cross move to dismiss the claims against Brothers.  *See* Defs.' Mem. of Law in Opp., Dec. 16, 2024, D.E. 13-1. Defendants reiterate that Plaintiff fraudulently joined Belo as a party and further assert that Plaintiff has failed to state a claim against Brothers pursuant to Rule 12(b)(6).  In support of Defendants' cross-motion, Belo submitted a Certification wherein she states that she "was

---

[4] N.J. Stat. Ann. § 34:19-3 *et seq.*

4

performing Human Resources' related-functions" during Plaintiff's employment but she "did not have supervisory or managerial authority" over Plaintiff and "did not have the authority to hire, terminate, or discipline" Plaintiff. Cert. of Marilyn Belo, Dec. 16, 2024, D.E. 13-4, ¶¶ 2-4.

In reply, Plaintiff argues that Belo was not fraudulently joined because she was an employer within the meaning of CEPA and had the authority to terminate him. Reply, D.E. 17; Decl. of Michael Jacobson, Jan. 6, 2025, D.E. 17-1, ¶¶ 2-3. Plaintiff also asserts that Belo clearly had the authority to terminate him because during the course of Plaintiff's employment, Plaintiff and Belo had several conversations, during which Belo mentioned her decisions to either terminate or not terminate other Charm City employees. Decl. of Michael Jacobson, Jan. 6, 2025, D.E. 17-1, ¶ 4. With respect to Defendants' cross-motion to dismiss, Plaintiff maintains that he alleges sufficient facts against Brothers, in his role as CEO, to demonstrate that Brothers participated in the decision to terminate him one week after he alerted Belo that there were issues with Ramirez. Reply, D.E. 17, at 6-7.

### III.   LEGAL STANDARD AND ANALYSIS[5]

#### A.   MOTION TO REMAND

##### 1.   DIVERSITY

The party seeking removal based on diversity must demonstrate that the matter satisfies the requirements of removal under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441. When jurisdiction is predicated on diversity of citizenship under § 1332, it "requires satisfaction of the amount in controversy requirement as well as complete diversity between the parties, that is, every plaintiff

---

[5] Motions to remand and dismiss are dispositive. *See In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998); *see also Robinson v. CRS Facility Svcs., LLC*, No. 12-2693, 2013 WL 6178583, *2 (D.N.J. Nov. 25, 2013). Accordingly, the Undersigned addresses the instant motions via Report and Recommendation.

must be of diverse state citizenship from every defendant." *In re Briscoe,* 448 F.3d 201, 215 (3d Cir. 2006).  In most cases, if any plaintiff and any defendant share citizenship, complete diversity will be defeated.  *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365 (1978); *Grand Union Supermarkets of the Virgin Islands, Inc., v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 410 (3d Cir. 2003).

Here, Plaintiff contends that Defendants' removal was improper because there is a lack of complete diversity, depriving the Court of subject matter jurisdiction.  Defendants argue, however, that the fraudulent joinder exception applies as to non-diverse Defendant Belo, and therefore complete diversity exists.

### 2. FRAUDULENT JOINDER

"The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006).  That said, "[t]he removing party bears a 'heavy burden of persuasion' towards showing that a non-diverse party was fraudulently joined." *Mersmann v. Cont'l Airlines*, 335 F. Supp. 2d 544, 547 (D.N.J. 2004) (quoting *Batoff*, 977 F.2d at 851).  A court will find joinder to be fraudulent if there is no reasonable factual or legal basis to support the claim against the joined defendant, or if the plaintiff has manifested no genuine intent to against the joined defendant.  *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (quoting *In re Briscoe*, 448 F.3d at 217).  A claim is "colorable" when it is not "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 852.  In other words, "[i]f there is even a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court . . . ." *Brown*, 575 F.3d at 326 (quoting *Batoff*, 977 F.2d at 851) (emphasis added).

In determining whether the claim against the joined defendant is colorable, the Third Circuit has instructed that the court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Although the Undersigned may consider limited "reliable evidence that the defendant may proffer to support the removal," I must be cautious not to wade into an analysis of the merits of Plaintiff's claims. *In re Briscoe*, 448 F.3d at 220 (stating that the Court may consider evidence of when a claim accrued for statute of limitations purposes "or other relevant matters that are properly subject to judicial notice").

Accordingly, "the fraudulent joinder inquiry is *not* a Rule 12(b)(6) inquiry." *Perry v. ADT LLC*, No. 17-6676, 2018 WL 1221161, at *3 (D.N.J. Mar. 8, 2018) (quoting *Briganti v. HMS Host Int'l*, No. 14–4813, 2015 WL 1268300, at *4 (D.N.J. Mar. 16, 2015)) (emphasis in original). The Undersigned's task is to review the factual allegations of the Complaint and applicable legal principles to determine whether Plaintiff's claims against Belo are so "wholly insubstantial and frivolous" such that Defendants may properly invoke the subject matter jurisdiction of this Court. *Batoff*, 977 F.2d at 852; *see also Perry*, 2018 WL 1221161, at *3-4 (emphasizing the "liberality required for this jurisdictional analysis" and that the "Court's task is to decide whether a cause of action exists, because to inquire any further into the legal merits would be inappropriate in a preliminary jurisdictional determination" (internal quotation marks omitted)).

3. **CEPA**

A plaintiff alleging a cause of action pursuant to CEPA must show that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in [N.J. Stat. Ann. §] 34:19-

7

> 3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Myers v. Advanced Stores Company Inc.*, No. 19-18183, 2020 WL 2744632, at *3 (D.N.J. May 27, 2020) (quoting *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003)). Thus, under CEPA, it is unlawful for an employer to take "retaliatory action against an employee" because the employee discloses to a supervisor "an activity, policy or practice of the employer ... that the employee reasonably believes" violates a law, rule, or regulation. N.J.S.A. 34:19-3. "Retaliatory action," among other things, includes a discharge, or "other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e).

CEPA defines a supervisor as "any individual with an employer's organization who has the authority to direct and control the work performance of the affected employee, who has authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains. . . ." N.J.S.A. 34:19-2(d). That includes "any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." N.J.S.A. 34:19-2(a).

Since *Palladino ex rel. U.S. v. VNA of Southern New Jersey, Inc.*, 68 F. Supp. 2d 455, 471–72 (D.N.J. 1999), it has been well established that the employer's agents, such as the complaining employee's supervisor, can be held liable under CEPA, because CEPA applies a typical standard for respondeat superior under N.J.S.A. 34:19-2(a). *See, e.g., Curley v. Mercury Ins. Services*, No. 21-12259, 2022 WL 445633, * (D.N.J. Feb. 10, 2022) ("Therefore, CEPA liability not only attaches to corporations, but 'may attach to individuals who perform retaliatory acts' within the scope of his or her employment as well.") (quoting *Southward v. Elizabeth Bd. of*

*Educ.*, No. 15-3699, 2017 WL 111924, *10 (D.N.J. Jan. 11, 2017)). Thus, liability under CEPA "may attach to individuals who perform retaliatory acts," even to those who are co-workers or indirect supervisors if they participated in the retaliatory action. *Southward*, 2017 WL 111924 at *10; *see also Bowen v. Parking Auth. Of City of Camden*, No. 00-5765, 2003 WL 22145814, at *22–23 (D.N.J. Sept. 18, 2003) (allowing plaintiff's CEPA claim against defendant co-worker, whom plaintiff occasionally supervised, to survive summary judgment); *Dewelt v. Measurement Specialties*, No. 02-3431, 2007 WL 542234, *7-9 (D.N.J. Feb. 16, 2007) (allowing plaintiff's CEPA claims against employees and non-employee members of Board of Directors to survive summary judgment). But CEPA requires personal involvement. Thus, a plaintiff seeking to hold an individual defendant liable must allege that defendant took an adverse action against the plaintiff. *Curley*, 2022 WL 445633, at *17-18.

### 4. ANALYSIS

The sole issue in this motion to remand is whether Plaintiff fraudulently joined Defendant Belo in the CEPA claim to defeat diversity, as Defendants contend. Notice of Removal, D.E. 1, ¶¶ 9-13. Plaintiff asserts that Defendants have failed to satisfy their burden of proving fraudulent joinder. Pl.'s Br. in Supp. of Mot. to Remand, Nov. 21, 2024, D.E. 8-1, 2, 5-8. Plaintiff contends that he has adequately plead the factual basis required to name Belo as an individual defendant under CEPA. Specifically, Plaintiff maintains that: (1) Belo was an employer as CEPA defines that term; (2) he engaged in protected activity by advising Belo regarding Ramirez's conduct; and (3) a week after apprising Belo of the issues with Ramirez, Plaintiff was terminated. *Id.* at 5-8.

9

Defendants respond that Plaintiff cannot sustain a CEPA claim against Belo because she did not supervise Plaintiff.  Defs.' Mem. of Law in Opp., Dec. 16, 2024, D.E. 13-1, at 1-2; 6-7.  They aver that Plaintiff named Belo as a defendant solely to defeat diversity jurisdiction.  *Id.*

The Complaint adequately pleads each of the elements of individual liability under CEPA against Belo, such that this Court cannot eliminate the possibility that a state court would entertain Plaintiff's CEPA claim against Belo.  Stated differently, a review of the Complaint compels the conclusion that there is "a possibility that a state court would find that the complaint states a cause of action against" Belo.  *In re Briscoe*, 448 F.3d at 217.  First, the Complaint satisfactorily pleads that Plaintiff engaged in a protected activity when he complained to Belo that Ramirez's actions violated both company policy and FAA regulations, and placed Charm City at serious risk.  Compl., D.E. 1, ¶¶ 25-27.  Second, Plaintiff adequately alleges both that he suffered a retaliatory action and a causal connection between his whistleblowing and his retaliatory firing.  Specifically, he asserts one week after emailing Belo about Ramirez's conduct, Charm City terminated him through its agents, Belo and Brothers.  *Id.* ¶¶ 19, 23-24.

The principal contention is whether the Complaint sufficiently alleges that Belo supervised Plaintiff to qualify as an "employer" within the meaning of N.J.S.A. 34:19-2(a).  Defendants contend that Belo "had no managerial responsibility for Plaintiff" but would investigate his allegations in the performance of her Human Resources functions.  Def. Opp'n Brief, D.E. 13-1, at 6.

But an employer may include an individual who acts on the company's behalf, and who participates in the alleged retaliation, even if that person is not a direct supervisor.  *Bowen*, 2003 WL 22145814 at *22–23; *Dewelt*, 2007 WL 542234, *7-9.  In this case, Plaintiff alleges that he complained to Belo, in her capacity as Director of Human Resources, that Ramirez was not

10

reporting cash income. Compl., D.E. 1, ¶ 25. According to the Complaint, "Belo assured Plaintiff that she would speak to Mr. Ramirez about the cash income and make sure that he reported this income properly in the future," but Plaintiff asserts that despite Belo's assurances, he never saw this cash income reported. *Id.* ¶¶ 25-26. Plaintiff also alleges that on May 10, 2024, he emailed Belo regarding Ramirez. *Id.* ¶ 27. In particular, Plaintiff informed Belo that Ramirez was engaging in conduct that was placing Charm City at risk. *Id.* Plaintiff notified Belo that Ramirez was making logistics decisions in violation of FAA regulations and company policy because Ramirez was non-aviation personnel. *Id.* Plaintiff advised Belo that he had spoken to Ramirez about his conduct on numerous occasions to no avail. *Id.* Finally, he instructed Belo that if Ramirez continued down this path, Charm City could lose both its operation certificate and its letters of authorization. *Id.* Plaintiff alleges that one week after sending this email to Belo he was terminated by Brothers and Belo as Charm City's agents. *Id.* ¶¶ 28, 31, 36, 41, 46.

Taken as a whole, the Complaint sufficiently alleges that Belo acted as an agent of Plaintiff's employer, Charm City. Belo was the Director of Human Resources and Administration for Charm City, and therefore a logical point of contact for Plaintiff's concerns about Ramirez's conduct. Plaintiff specifically alleges that Belo participated in the retaliatory acts when she terminated Plaintiff, only a week after he sent her emails describing Ramirez's conduct. Complaint, D.E. 1, ¶¶ 25, 27-28. Based on these alleged facts, the Court finds there is a possibility "that a state court would find that Plaintiff stated a CEPA claim" against Belo. *Curley*, 2022 WL 445633, at *6 (citing *Batoff*, 977 F.2d at 851).

It is true that the Complaint does not recite, in granular detail, the specific actions that Defendant Belo took to participate in the alleged retaliation. To be sure, Plaintiff certainly could

have included more detail.  For example, Plaintiff submitted a declaration as part of his reply on the motion to remand.  That declaration includes details not plead in the Complaint.  There, Plaintiff declares that on May 17, 2024, one week after Plaintiff advised Belo that Ramirez was violating both company policy and FAA regulations, Belo informed Plaintiff that after she had spoken with Brothers, they had decided to terminate his employment.  Decl. of Michael Jacobson, Jan. 6, 2025, D.E. 17-1, ¶¶ 2-3.

Moreover, this matter is still in the pleading stage and discovery has been stayed pending resolution of the jurisdictional challenge and motion to dismiss.  Order, Feb. 3, 2025, D.E. 22.  As the court noted in *Curley*:

> The Court must bear in mind that while individual liability requires specific facts pertaining to each individual defendant, prior to discovery, 'a plaintiff cannot be expected to be privy to the inner workings' of the retaliatory actions and decisions individuals made against them, and thus, have allowed plaintiffs to proceed beyond the motion to dismiss stage to discover additional information on the alleged retaliation.

*Curley*, 2022 WL 445633, at *5 (citing, in part, *Tonklinson v. Byrd*, No. 17-6162, 2018 WL 1919829, at *4 (D.N.J. Apr. 24, 2018) ("Even though Plaintiff will ultimately have the burden of establishing the specific actions of each Defendant in order to impose liability on them, at this point the Court cannot fault Plaintiff for not pleading more specifically who made the decision . . . to terminate Plaintiff, . . . because most of that information is within Defendants' knowledge.")).

For those reasons, the Court is satisfied that Plaintiff has not fraudulently joined Defendant Belo.  Plaintiff has adequately alleged her involvement in his termination as retaliation for his complaints at this pleading stage, and is entitled to conduct discovery to investigate the specifics of his termination.  It therefore follows that diversity of citizenship does

not exist. Accordingly, the Court recommends that this action be remanded to state court for lack of subject matter jurisdiction.

### B. ATTORNEY'S FEES

Next, the Court considers Plaintiff's application for attorney's fees. An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Fees are appropriate "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.,* 546 U.S. 132, 141 (2005). Courts maintain broad discretion to award or deny fees, and may grant fee applications regardless of whether removal was in bad faith. *Stephens v. Gentilello,* 853 F. Supp. 2d 462, 471 (D.N.J. 2012). However, "[t]he Supreme Court counsels district courts to only award attorney's fees in 'unusual circumstances' where the 'removing party lacked an objectively reasonable basis for seeking removal.'" *Curley v. Mercury Ins. Servs., LLC*, No. 21-12259, 2022 WL 445633, at *6 (D.N.J. Feb. 10, 2022) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)).

Although Defendants have not met the heavy burden of establishing fraudulent joinder, the Court cannot conclude that Defendants' removal was objectively unreasonable. The award of such fees is a discretionary matter, and, because the Court cannot conclude that Defendants' removal petition was frivolous or insubstantial, attorneys' fees are inappropriate. Therefore, the Undersigned respectfully recommends that the District Court deny Plaintiff's request for attorney's fees.

### C. MOTION TO DISMISS

Because the Court lacks subject matter jurisdiction over this action, the pending motion to dismiss should be left for the state court to decide after remand. *See, e.g.*, *HSBC Bank USA,*

*Nat'l Ass'n v. Shim*, No. 23-1245, 2023 WL 4543015, at *6 (D.N.J. June 20, 2023) (administratively terminating motion to dismiss after recommending the District Court remand the action to state court), *R. & R. adopted sub nom. HSBC Bank, USA v. Shim*, No. 23-1245, 2023 WL 11830777 (D.N.J. Oct. 19, 2023).  Accordingly, the Court further recommends that the District Court terminate the motion to dismiss.

### IV.   CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends that the District Court grant Plaintiff's motion to remand, deny Plaintiff's request for attorney's fees, and terminate Defendants' cross-motion to dismiss the Complaint as to Brothers.

The parties have fourteen days to file and serve objections to this Report and Recommendation.  *See* 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

*s/ Michael A. Hammer*
**United States Magistrate Judge**

**Dated: June 2, 2025**